IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division
Case No. 1:12-cv-388

WILLIAM N. DEVLIN and wife CARRI A. LUCKSAVAGE,

    Plaintiffs

v.

WELLS FARGO BANK, N.A.

    Defendant.

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendant Wells Fargo Bank, National Association ("Wells Fargo") files this Brief in Support of its Motion to Dismiss and respectfully shows the Court as follows:

## Introduction

In November 2004, Plaintiffs William N. Devlin and Carri A. Lucksavage (collectively, "Plaintiffs") borrowed: (i) $409,600 from Wells Fargo to purchase certain real property in Arden, North Carolina (the "Property"); and (ii) an additional $99,800 as a home equity loan secured by the same Property (collectively, the "Loans").

Plaintiffs defaulted on their payment obligations under the Loans in 2007. Although Plaintiffs admit they defaulted because of the "real estate collapse and economic collapse which began in 2007," they seek damages from Wells Fargo for allegedly making loans to Plaintiffs for which they did not qualify. (*Complaint* ¶ 12 and ¶¶ 16-23).

Plaintiffs also want to keep the Property Plaintiffs purchased with the money they borrowed from Wells Fargo and have not repaid. (*Complaint* ¶¶ 24-25) (seeking to enjoin any

foreclosure on the Property because Plaintiffs allege the note and deed of trust were procured by fraud).

Plaintiffs do ***not*** contend Wells Fargo misrepresented ***any*** of the terms of either Loan. Instead Plaintiffs' claims[1] rest on contentions that Wells Fargo wrongfully relied on inflated income figures – that a mortgage broker placed in Plaintiffs' loan application – when agreeing to make the Loans. As set forth below, Plaintiffs' claims should be dismissed because they are premised on implausible inferences that:

1. Wells Fargo deliberately made the Loans when it knew Plaintiffs would default;

2. Plaintiffs were somehow misled or deceived when the mortgage broker misrepresented their income to Wells Fargo; and

3. Wells Fargo damaged Plaintiffs by failing to anticipate the financial crisis that actually triggered Plaintiffs' defaults under the Loans.

The claims should also be dismissed because they are premised on the breach of a legal duty that does not exist; to wit: that a bank has a duty to determine whether a loan is a good deal for its borrower.

Additionally, Plaintiffs' claims are barred by the applicable statutes of limitations and Plaintiffs have failed to plead the alleged fraud and unfair or deceptive trade practices[2] with the required particularity.

---

[1] Plaintiffs bring four claims: Breach of the Duty of Good Faith and Fair Dealing, Fraud, Deceptive Trade Practices, and Injunctive Relief.

[2] To state a North Carolina UDTPA claim, a plaintiff must allege that "(1) defendant[ ] committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998)). Because the unfair or deceptive trade practices claim here is premised on the alleged fraud, it cannot stand if the fraud claim is not adequately pled. S*ee, Childers v. Hayes*, 77 N.C. App. 792, 796, 336 S.E.2d 146, 149 (1985) (upholding dismissal of UDTPA claim when underlying negligence and fraud claims were dismissed).

### Factual Allegations

Plaintiffs retained a mortgage broker, JV WFHM Prosperity Mortgage ("Prosperity"), to secure a loan to purchase the Property (*Complaint* ¶ 5) and ultimately obtained a loan from Wells Fargo on November 29, 2004 (*Id.* ¶ 11). Prosperity's agent purportedly asked Plaintiffs to sign various loan application documents in blank so Prosperity could fill in the information to be submitted to Wells Fargo. (*Id.* ¶ 8). Without Plaintiffs' knowledge, Prosperity falsely inflated Plaintiffs' income in the loan documents and submitted them to Wells Fargo. (*Id.* ¶ 14). Plaintiffs made the required payments on the loan until 2007. (*Id.* ¶12). However, "during the real estate collapse and economic collapse which began in 2007 and continues to this day, [Plaintiffs] have been unable to keep up with the strenuous loan payment associated with" the Loans. (*Id.* ¶ 12).

### Standard Supporting Motion to Dismiss

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quotations omitted). Moreover, the Fourth Circuit following *Twombly* has recognized that a court need not accept conclusory allegations regarding the legal effect of the facts alleged or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Under these well-established requirements, the Complaint fails to state a claim against Wells Fargo.

## Legal Analysis

**I.      Plaintiffs' claims for damages are barred by the applicable statutes of limitations.**

As a threshold matter, all of Plaintiffs' claims are barred by the applicable statutes of limitations because they accrued more than four years before Plaintiffs filed this action. *See* N.C. Gen. Stat. § 1-52 (breach of contract and fraud– three years); N.C. Gen. Stat. § 75-16.2 (UDTPA – four years); *see also Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) ("Federal courts sitting in diversity generally apply state statutes of limitations.").

**II.     Plaintiffs' claims should be dismissed because they depend on implausible inferences.**

As noted above, conclusory allegations and claims premised on "unwarranted inferences, unreasonable conclusions, or arguments" are not sufficient to withstand a motion to dismiss. *Girratano, supra.* Here, all of the claims depend upon unwarranted deductions of fact and unreasonable inferences. In determining whether a complaint contains sufficient facts to state a plausible claim for relief, the Court need not abandon common sense. To the contrary, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 129 S.Ct. at 1950. Wells Fargo's actions as alleged in the Complaint simply defy common sense.

(i)      <u>Plaintiffs Theory Suggests Wells Fargo Defrauded Itself</u>

Plaintiffs would have this Court believe that Wells Fargo essentially defrauded itself by inflating Plaintiffs income to qualify them for Loans they could not repay. Plaintiffs, however, overlook the obvious fact that the allegedly inflated income would also harm Wells Fargo by causing it to make loans that could not be repaid. In fact, the only plausible inference from

4

Plaintiffs' factual allegations is that Wells Fargo was itself a victim – not a perpetrator – of the alleged fraud.[3]

Further, the claims here identify no credible incentive for Wells Fargo to artificially *misrepresent to itself* information about a borrower's financial information and knowingly make a loan it did not believe Plaintiffs could repay. Plaintiffs allege in summary fashion that Wells Fargo's actions were motivated by "their zeal to obtain loan portfolios. . . ." (*Complaint*, ¶ 19). To suggest that Wells Fargo was motivated to obtain unprofitable loan portfolios is nonsensical.

Applying the common sense analysis to similar circumstances, United States District Courts – including the Western District of North Carolina – have dismissed Plaintiffs' claims against their lenders for failing to satisfy *Iqbal*'s threshold requirement of plausibility. *See, e.g., Goldstein v. Bank of Am., N.A.*, 1:09-cv-329, 2010 U.S. Dist. LEXIS 28887, at *8-14 (W.D.N.C. Jan. 19, 2010) (finding a bank's participation in a scheme to inflate lot prices implausible and insufficient to state a claim under *Iqbal*); *Skeels v. Bank of Am., N.A.*, No. 1:09-cv-335, 2009 U.S. Dist. LEXIS 122450, at *1-4 (W.D.N.C. Dec. 15, 2009), *adopted by*, 2010 U.S. Dist. LEXIS 1326 (W.D.N.C. Jan. 7, 2010); *Feeley v. Total Realty Management,* 660 F. Supp. 2d 700, 704-05 (E.D. Va. 2009) ) ("What does the bank get out of this, loan fees, foreclosed upon unimproved land to carry on their books?"); *Bank of Am. v. Lykes*, No. 1:09-cv-435, 2010 U.S. Dist. LEXIS 65205, at *12-14 (W.D.N.C. May 20, 2010) (rejecting counterclaims on personal guarantees associated with a development loan and holding that, "to survive Rule 12(b)(6) analysis it would have to be plausible that a bank would engage in a scheme that, if successful, risked loss of $4.6 million dollars of BANA funds in order to increase short-term revenue.").

---

[3] Plaintiffs allege they signed application forms in blank so that they could be completed by *Prosperity* and submitted to Wells Fargo for consideration. (*Id.* ¶8).

(ii) <u>Plaintiffs Could Not have Relied on or been Deceived by the Alleged Misrepresentation of Income</u>.

The only false statement of fact at issue is the allegedly false statement of income in Plaintiffs' loan application. Though Plaintiffs recite the formulaic elements of fraud and deceptive trade practices – that they relied on and were deceived by Wells Fargo's alleged misstatement of their income – it is beyond the realm of reason that Plaintiffs relied on, or could have been deceived by, any such misrepresentations. Plaintiffs ask this Court to ignore that Plaintiffs were in the best position to know whether they could afford a certain monthly payment amount. Given that the misrepresentations were contained in an application Plaintiffs signed in blank and entrusted to their mortgage broker to complete, the more plausible conclusion is that Plaintiffs – or their mortgage broker – made misrepresentations to Wells Fargo.

(iii) <u>Plaintiffs Admit their Alleged Harm was Caused by the Economic Downturn</u>

Plaintiffs' own allegations belie their contentions that they were damaged by Wells Fargo's purported use of inflated income figures in the underwriting process. Specifically, Plaintiffs' admit they were able to make the Loan payments until the "real estate collapse and the economic collapse which began in 2007 and continues to this day." (Complaint ¶ 12).

### III. **Plaintiffs claims rely upon breach of a non-existent duty**

Plaintiffs' Complaint presupposes Wells Fargo breached a duty to them by approving their loan application in reliance on inflated income figures. (*Complaint*, ¶¶ 19, 22). However, as a matter of law, a lender owes no duty to a borrower to evaluate the financial propriety of a loan, or to ensure that a borrower can afford the payments. Instead, the onus is on a borrower to exercise due diligence in evaluating the loan. *Wells Fargo v. VanDorn*, 2012 NCBC 6 ¶ 21(N.C. Super. Ct. 2012) (There is no basis to impose on the lender the duty to assess the investment risk

6

Case 1:12-cv-00388-MR   Document 5   Filed 01/03/13   Page 6 of 12

[Plaintiffs] elected to undertake in purchasing [property]; *Nixon v. Alan Vester Auto Group, Inc.*, No. 1:07-cv-839, 2008 U.S. Dist. LEXIS 79294, at *18 (M.D.N.C. Oct. 8, 2008) ("Plaintiff is attempting to foist her own responsibility for making an unwise decision on [her lender]. This cannot be the basis for liability in a rational system of law.").[4]

In fact, under North Carolina law, in the absence of unique circumstances giving rise to a fiduciary duty, "[a] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." *Lassiter v. Bank of North Carolina*, 146 N.C. App. 264, 268, 551 S.E.2d 920, 922 (2001); *see also Branch Banking & Trust Co. v. Thompson,* 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

Wells Fargo did not owe Plaintiffs a duty to protect them from making a bad investment. Plaintiffs decided to purchase the Property and determined that they could afford to repay the Loans under the specified terms. Plaintiffs received what they sought and, now that it has proven to be unaffordable years later as a result of an economic downturn, they want this Court to recognize a novel claim based on Wells Fargo's failure to deny their loan application. Plaintiffs were in the best position to ascertain their ability to afford the Property, and their attempt to hold Wells Fargo liable for their financial decision should be rejected.

## IV. Plaintiffs fail to allege facts sufficient to state a claim for fraud.

### A. Plaintiffs' claim does not meet the heightened pleading requirements of Rule 9(b)

To state a claim for fraud, Plaintiffs must allege that:

---

[4] *See also, LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 852 (N.D. Ill. 2008) ("[L]enders have no duty to refrain from making a loan if the lender knows or should have known that the borrower cannot repay the loan."); *FDIC v. Smith*, 848 F. Supp. 1053, 1057 (D. Mass. 1994) ("[The bank] owed no duty to defendants as borrowers or guarantors to exercise reasonable care before approving additional loans."); *In re Fordham*, 130 B.R. 632, 646-47 (Bankr. D. Mass. 1991) ("To impose such requirements would significantly alter the relationship between banks and those with whom they deal. In effect, it would impose liability upon banks for business failures arising through ventures they financed.");

(1) Wells Fargo made a representation relating to some material past or existing fact;

(2) The representation was false;

(3) When it made it, Wells Fargo knew the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion;

(4) Wells Fargo made the representation with intention that it should be acted upon by Plaintiffs;

(5) Plaintiffs reasonably relied upon the representation and acted upon it; and

(6) Plaintiffs thereby suffered injury.

*In re Baby Boy Shamp*, 82 N.C.App. 606, 612, 347 S.E.2d 848, 852 (1986).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[T]he general rule that pleadings are to be given liberal construction does not apply to claims of fraud." *Ahmed v. Porter*, No. 1:09-cv-101, 2009 WL 2581615, at *8 (W.D.N.C. June 23, 2009) (unpublished). In construing Rule 9(b), the Fourth Circuit requires that a plaintiff plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *Liner v. DiCresce*, 905 F. Supp. 280, 287 (M.D.N.C. 1994); *Riley v. Murdock*, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993)). The particularity required under Rule 9(b) has not been satisfied in this case.

Without alleging any facts to support their conclusion, Plaintiffs assume Wells Fargo is vicariously liable for the alleged misrepresentations of Prosperity, Plaintiffs' mortgage broker. (*Complaint* ¶ 6). However, to sustain a claim for fraud based on an agency theory, Plaintiffs must plead facts from which the Court can infer that Prosperity was, in fact, acting as Wells Fargo's agent. "The unsupported statement that [the agent] acted as an agent on behalf of [the principal]

is insufficient to allege an agency relationship encompassing the authority to make allegedly fraudulent statements." *Karamath v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 135038 at *15 (E.D.N.Y. Aug. 29, 2012) (citations omitted). Plaintiffs fail to allege any such facts from which this Court could impute Prosperity's actions to Wells Fargo.

Additionally, Plaintiffs assertion that "various loan application documents" were "fraudulently and illegally filled out" by "the agents of Defendant" falls far short of providing the particularity required to withstand a motion to dismiss. (*Complaint* ¶ 14). Plaintiffs state "Prosperity and Wells Fargo produced false income numbers upon which it loaned money to Plaintiffs," but fail to allege who, where, and when specifics of the alleged act. Without these specifics Plaintiffs' fraud claim fails to meet the heightened pleading requirements of Rule 9(b).

### B. Plaintiffs' could not reasonably rely on the alleged misrepresentations.

Reliance is not justified, as required to support a fraud claim, if a plaintiff has an alternative source for the allegedly concealed or misrepresented information. *Sullivan v. Mebane Packaging Group, Inc.*, 158 N.C.App. 19, 27-28, 33-34, 581 S.E.2d 452, 458-59, 462-63. Consistent with this general rule, a party may not reasonably or justifiably rely upon a misrepresentation if it could have discovered the truth by a reasonably adequate inquiry, including by reading a contract. *Sullivan*, 158 N.C.App. 19, 27, 28, 33-34, 581 S.E.2d 452, 458-59, 462-63 (2003).

Plaintiffs allege Wells Fargo committed fraud by misrepresenting their income on various documents associated with the Loans. (*Complaint* ¶ 19). Notwithstanding the implausibility of this assertion, discussed above, Plaintiffs knew their income and should have known what payments they could afford and could not have relied on any misrepresentations to the contrary. Additionally, Plaintiffs had the opportunity and obligation to review their loan application and

final loan documentation prior to signing them. Plaintiffs may not now claim that they were "totally oblivious to the consequences" of entering into the loan with Wells Fargo to escape the obligations they freely entered, which were plainly stated on the face of the documents.

V. **Plaintiffs' complaint fails to allege facts sufficient to support a claim for breach of the duty of good faith and fair dealing.**

A cause of action for breach of the duty of good faith and fair dealing does not exist in North Carolina absent a cause of action for breach of contract. *See Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (citing *Polygenex Int'l, Inc. v. Polyzen, Inc.,* 133 N.C. App. 245, 251, 515 S.E.2d 457, 461-62 (1999) ("affirming lower court's sanction against plaintiff for filing claim for breach of covenant of good faith because absent a breach of the contract, there is no cause of action for breach of an implied covenant of good faith").[5] Because Plaintiffs have failed to identify any breach of contract, their free-standing claim for breach of the implied covenant of good faith and fair dealing fails. *Id.* at *11; *Ada Liss Group v. Sara Lee Corp.*, 2010 WL 3910433 *14 (M.D.N.C. April 27, 2010) (unpublished).

VI. **Plaintiffs' complaint fails to allege facts sufficient to state a claim for injunctive relief.**

"Injunctive relief is not a matter of right but is granted sparingly and cautiously. 'In other words, the relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury. The plaintiff has the burden of proving the facts which entitle him to relief.'" *DuBose v. Gastonia Mut. Sav. & Loan Ass'n*, 55 N.C. App. 574, 579, 286 S.E.2d 617, 620 (1982) (quoting 42 Am. Jur. 2d, Injunctions, § 26, p. 760) (emphasis

---

[5] An independent claim for breach of this duty has only been recognized with the existence of a special relationship not implicated in this case, *i.e.,* contracts for funeral services and insurance. *Meineke Car Care Centers, Inc. v. RLB Holdings, Inc.*, 2009 WL 2461953 *11 (W.D.N.C. Aug. 10, 2009) (unpublished).

added); *see also*, *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983); G.S. 1-485 and Rule 65.

A preliminary injunction is an extraordinary measure that "should not be lightly granted." *Travenol Lab., Inc. v. Turner*, 30 N.C. App. 686, 692, 228 S.E.2d 478, 483 (1976). Under North Carolina law, Plaintiffs must establish both: (a) a likelihood of success on the merits of his case; *and* (b) that he will suffer irreparable harm that cannot be remedied by an award of damages. *A.E.P. Indus.,* 308 N.C. at 401, 302 S.E.2d at 759-60; *see also, Reese v. Mecklenburg County*, 200 N.C. App. 491, 505, 685 S.E.2d 34, 42 (2009). For the reasons set forth above forming the basis of Well Fargo's motion to dismiss, Plaintiffs cannot establish a likelihood of success on the merits. Accordingly, the Court should dismiss Plaintiffs' claim for injunctive relief to prevent the foreclosure of the Property.

For the foregoing reasons, Wells Fargo respectfully requests this Court dismiss all of the claims in Plaintiffs' Complaint with prejudice.

This the 3rd day of January, 2013.

        **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

        /s/ Kenneth B. Oettinger, Jr.
        Kenneth B. Oettinger, Jr. (NC State Bar No. 20064)
        Lee Williams (NC State Bar No. 35657)
        301 South College Street, Suite 3500
        Charlotte, NC 28202-6037
        Telephone: (704) 331-4900
        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January, 2013, the foregoing "**Brief in Support of Motion to Dismiss**" was served via the Court's CM/ECF system as follows:

> David R. Payne
> David R. Payne, P.A.
> 1 North Pack Square, Suite 500
> Asheville, NC 28801
> dpayne@drplawfirm.com
>
> *Attorney for Plaintiff*

/s/ Kenneth B. Oettinger, Jr.
Kenneth B. Oettinger, Jr.