## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:12-cv-000388-MR-DLH

| | | |
|---|---|---|
| **WILLIAM N. DEVLIN and wife** | ) | |
| **CARRI A. LUCKSAVAGE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. 12].

## I.    PROCEDURAL BACKGROUND

This civil action was brought in relation to the Plaintiffs' purchase of Lot 3, 31 Cotswolds Court, Arden, North Carolina 28704 in Buncombe County, North Carolina ("the property"). [Doc. 1-1]. The Plaintiffs filed suit against Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank"), asserting claims for breach of duty of good faith and fair dealing; fraud; violations of the North Carolina Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("Chapter 75"); and injunctive relief, all arising from the Defendant's

alleged involvement in fraudulently inflating the Plaintiffs' incomes on their loan applications in order to provide loans to the Plaintiffs for which they did not qualify. [Id. and Doc. 11].

The Plaintiffs originally filed this action in the Buncombe County North Carolina General Court of Justice, Superior Court Division, on November 2, 2012. [Doc. 1-1]. On November 6, 2012, the Defendant properly removed this action to this Court. [Doc. 1]. After the Defendant moved to dismiss the Plaintiffs' Complaint on January 3, 2013 [Doc. 4], the Plaintiffs brought a motion to amend their Complaint. [Doc. 6]. After the Plaintiffs filed their Amended Complaint on August 19, 2013 [Doc. 11], the Defendant renewed its motion to dismiss pursuant to Rule 9 and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 12].

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and  Ashcroft v. Iqbal, 556 U.S. 662 (2009). As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

2

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.  As the Fourth Circuit has recently explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements.  Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

In reviewing a complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal

conclusions." <u>Aziz v. Alcolac, Inc.</u>, 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." <u>Walters</u>, 684 F.3d at 439. Notably, a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)).

This Court sits in federal diversity jurisdiction over this civil case.[1] In "transactions bearing an appropriate relation to the state," "in the absence of an agreement between the parties" to the contrary, generally "state law will be applied" according to N.C. Gen. Stat. § 25-1-105(1). <u>See Boudreau v. Baughman</u>, 322 N.C. 331, 336, 368 S.E.2d 849, 854 (1988). "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." <u>Id.</u> at 335, 368 S.E.2d at 854. Similarly, in cases involving claims for unfair or deceptive trade practices, North Carolina

---

[1] The Plaintiffs are citizens and residents of Buncombe County, North Carolina. [Doc. 1-1, ¶ 1]. The Defendant's Notice of Removal notes that "Wells Fargo is a national banking association . . . [which is] a citizen for jurisdictional purposes in the state in which its main office, as set forth in its articles of association, is located. 28 U.S.C. § 1348 . . . [<u>see</u>] <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 307 (2006). Applying the <u>Schmidt</u> rule, Wells Fargo is a citizen of the State of South Dakota . . ." [Doc. 1]. The amount in controversy exceeds the statutory requirement of $75,000, [Doc. 1-1], and thus this case meets the 28 U.S.C. § 1332 requirements for federal diversity jurisdiction.

courts have applied the law of the state where the injuries were sustained. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983); Lloyd v. Carnation Co., 61 N.C. App. 381, 387-88, 301 S.E.2d 414, 418 (1983); United Va. Bank v. Air-Lift Assoc., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986). In cases involving financial injuries, courts have considered the injury to be sustained "where the economic loss was felt." Clifford v. Am. Int'l Specialty Lines Ins. Co., No. 1:04CV486, 2005 WL 2313907, at *8 (M.D.N.C. Sep. 21, 2005). Thus, North Carolina law will be applied in this action, since the property at issue is situated in North Carolina, the representations at issue are alleged to have been made in North Carolina, and the closing documents on the property were signed in North Carolina. [Docs. 1-1, 11].

## III. FACTUAL BACKGROUND

Taking the well-pled factual allegations[2] of the Amended Complaint[3] as true, the following is a summary of the relevant facts.

_____

[2] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the Amended Complaint, see Aziz, 658 F.3d at 391, as well as "[t]he mere recital of elements of a cause of action," see Walters, 684 F.3d at 439.

[3] The Plaintiffs' Amended Complaint [Doc. 11 at ¶ 26] reasserted the factual allegations as listed in the Plaintiffs' original Complaint. [Doc. 1-1].

In 2004, the Plaintiffs sought the help of mortgage broker JV WFHM Prosperity Mortgage ("Prosperity") as they desired to buy a home in Cotswolds Court, Arden, North Carolina. [Doc. 1-1 at ¶¶ 3-5]. The Plaintiffs provided necessary documentation to Prosperity, and Prosperity's agent requested the Plaintiffs to sign documents in blank to be later filled out by Prosperity's agent and then submitted to the Bank. [Id. at ¶¶ 7-8]. The Plaintiffs complied with Prosperity's requests and applied for a $409,600 loan in addition to a $99,800 equity loan on the property. [Id. at ¶ 9]. The Plaintiffs claim that they were "assured by both Prosperity and Wells Fargo Bank that said loans complied with all federal codes and regulations and that their loan was in fact 'an acceptable and good loan' for purposes of the transaction therein." [Id. at ¶ 10]. On November 29, 2004, the Plaintiffs executed the documentation to close on the property, based upon the documents that the Plaintiffs had provided to Prosperity's agent in addition to the loan applications that the Plaintiffs had signed and given to Prosperity's agent to complete and then give to the Bank. [Id. at ¶¶ 8, 11].

The Plaintiffs maintained their loan payments to the Defendant until "during the real estate collapse and the economic collapse which began in 2007 and continues to this day," after which "the Plaintiffs have been unable to keep up with the strenuous loan payment associated with the

original loan and equity line." [Id. at ¶ 12]. The Plaintiffs tried to obtain a loan modification from the Defendant but were unsuccessful in doing so. [Id. at ¶ 13]. During their attempted modification process, however, the Plaintiffs discovered that Prosperity's agent "fraudulently and illegally filled out various loan application documents as well as other federally mandated documents with false information related to the . . . income of the Plaintiffs." [Id. at ¶ 14]. Particularly, the income of the Plaintiff Lucksavage "was amplified three times its original amount" and the income of the Plaintiff Devlin was falsely represented since he was self-employed but the agents indicated that he had received W-2 income as well as other income "which was simply and totally false in nature." [Id. at ¶ 14].

Further, in their Amended Complaint, [Doc. 11], the Plaintiffs note that the Bank has commenced foreclosure proceedings against them regarding the property at issue in Buncombe County, North Carolina state court. [Id. at ¶ 31]. It is further alleged that the Bank "has agreed and consented to undergo a number of steps designed to remedy the deficiencies and unsafe or unsound business practices identified by federal regulatory officials with respect to [the Bank's] residential mortgage servicing and foreclosure processes" through a federal Consent Cease and Desist Order ("National Mortgage Settlement"). [Id. at ¶ 28]. The Plaintiffs claim that the Bank

violated the terms of this Order by continuing to attempt to foreclose on the Plaintiffs' property after the Plaintiffs gave notice to the servicer "that application for immediate assistance by way of the . . . national mortgage settlement was underway."  [Id. at ¶ 30].

## IV.   ANALYSIS

### A.   Whether Plaintiffs' Claims are Barred by the Applicable Statutes of Limitations

The Bank first argues that because all of the Plaintiffs' claims are premised on actions or representations that occurred at the time of the property closing in November 2004, their claims are now time barred.

"[A]sserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for defendants."  CSX Transp., Inc. v. Gilkison, 406 F. App'x 723, 728 (4th Cir. 2010) (per curiam) (quoting Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).  As the Fourth Circuit has explained:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.  But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  This principle only applies, however, if all facts necessary to the

> affirmative defense "clearly appear[ ] *on the face of the complaint.*"

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Forst, 4 F.3d at 250); see also Johnson v. N.C. Dep't of Transp., 107 N.C. App. 63, 67, 418 S.E.2d 700, 702 (1992) (holding that dismissal under Rule 12(b)(6) on the grounds of affirmative defense of statute of limitations is proper "if the complaint on its face reveals an 'insurmountable bar' to recovery") (citation omitted).

In the present case, the Plaintiffs have asserted claims for breach of duty of good faith and fair dealing, fraud, and Chapter 75 violations arising from the allegedly fraudulent conduct of the Defendant. Claims for the breach of duty of good faith and fair dealing are subject to a three-year statute of limitations in North Carolina, according to N.C. Gen. Stat. § 1-52(5). See Ussery v. Branch Banking & Trust Co., 743 S.E.2d 650, 654 (N.C. Ct. App. 2013). Additionally, the statute of limitations applicable to fraud and misrepresentation claims is three years. See N.C. Gen. Stat. § 1-52(9). This three-year statute of limitations begins to run "from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." Hunter v. Guardian Life Ins. Co., 162

N.C. App. 477, 485, 593 S.E.2d 595, 601, <u>rev. denied</u>, 358 N.C. 543, 599 S.E.2d 48 (2004) (citation omitted).

Finally, claims for Chapter 75 violations are subject to a four-year statute of limitations. <u>See</u> N.C. Gen. Stat. § 75-16.2. While a Chapter 75 claim generally accrues when the violation of the statute occurs, <u>see Jones v. Asheville Radiological Group, P.A.</u>, 134 N.C. App. 520, 527, 518 S.E.2d 528, 533 (1999), <u>rev'd in part on other grounds</u>, 351 N.C. 348, 524 S.E.2d 804 (2000), where the claim is based on fraudulent conduct, courts have determined that the cause of action arises at the time that the fraudulent conduct was discovered or should have been discovered with the exercise of due diligence. <u>See, e.g.</u>, <u>Faircloth v. Nat'l Home Loan Corp.</u>, 313 F. Supp. 2d 544, 553-54 (M.D.N.C. 2003), <u>aff'd</u>, 87 F. App'x 314 (2004).

"Imputing discovery of a fraud or misrepresentation for the purposes of triggering the statute of limitations on the willfully blind is long standing in North Carolina," since "[a] man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of carelessness . . ." <u>State Farm Fire & Cas. Co. v. Darsie</u>, 161 N.C. App. 542, 547-48, 589 S.E.2d. 391, 397 (2003) (quoting <u>Peacock v. Barnes</u>, 142 N.C. 215, 218, 55 S.E. 99, 100 (1906)); <u>see also Wysong & Miles Co. v. Emp'rs of Wausau</u>, 4 F. Supp. 2d 421, 433

(M.D.N.C. 1998), (citing <u>Feibus & Co., Inc. v. Godley Construction Co.</u>, 301 N.C. 294, 304-05, 271 S.E.2d 385, 392 (1980) and <u>Grubb Properties, Inc. v. Simms Investment Co.</u>, 101 N.C. App. 498, 501, 400 S.E.2d 85, 88 (1991))[4] (noting that "[w]hether a plaintiff exercised due diligence in discovering fraud is usually a question of fact, but this question may be determined as a matter of law where the plaintiff clearly had both the capacity and opportunity to discover the fraud").  Further, in North Carolina, "one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained."  <u>Williams v. Williams</u>, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942) (citing <u>Dellinger v. Gillespie</u>, 118 N.C. 737, 24 S.E. 538 (1896); <u>Griffin v. Lumber Co.</u>, 140 N.C. 514, 519, *et seq.*, 53 S.E. 307, 309 (1906); <u>Colt v. Kimball</u>, 190 N.C. 169, 129 S.E. 406 (1925); <u>Furst v. Merritt</u>, 190 N.C. 397, 402, 130 S.E. 40, 43 (1925); <u>Breece v. Oil Co.</u>, 211 N.C. 211, 189 S.E. 498 (1937)).

---

[4] The North Carolina Court of Appeals held that the plaintiff in <u>Grubb</u> "should have discovered that the deed for the property did not include an adjacent tract of land" when "preparing and filing a legal document describing property it had recently purchased." <u>Grubb</u>, 101 N.C. App. at 501-02, 400 S.E.2d at 88.

Thus, for each of the Plaintiffs' claims, a determination must be made as to when the Plaintiffs knew or should have known of the alleged fraudulent conduct or statutory violations. The Plaintiffs claim that the fraudulent misrepresentations giving rise to their claims are found in their loan application, as filled in by Prosperity's agent. They assert that they first learned of these misrepresentations when they attempted to get a loan modification sometime after 2007.[5] [Doc. 1-1 at ¶¶ 12-14]. The Plaintiffs initialed and signed their loan applications, however, on November 22, 2004. This action was filed significantly beyond the three years or four years limitations periods for their asserted claims when measured from that date. [Doc. 15]. The Plaintiffs alleged no facts contradicting that they willingly signed the blank loan application documents, "assum[ing] this was acceptable in all respects." [Doc. 1-1 at ¶ 8].

Thus, the Plaintiffs are "held to have signed with full knowledge and assent as to what is therein contained" in their loan applications. Williams, 220 N.C. at 809-10, 18 S.E.2d at 366. Although the Plaintiffs assert that

---

[5] In their original Complaint and in their Amended Complaint, the Plaintiffs did not allege a particular date when they discovered the alleged fraudulent information on their loan applications. [Docs. 1-1, 11]. Rather, they alleged that they learned of such information during their attempted loan modification which was after they had stopped making payments on the loans sometime in 2007. [Id.]. In their Brief in Opposition to the Motion to Dismiss, the Plaintiffs state for the first time that the "[f]alsified documents were discovered by Plaintiffs in response to a Qualified Written Request submitted to Defendant on April 19, 2012." [Doc. 14].

they "learned, through personal investigation," [Doc. 1-1 at ¶ 14], of the alleged misrepresented amounts in their own loan application documents later when they were attempting to obtain a loan modification, "a loan application is a request by the borrower for a loan; it does not contain any representations by the lender." Infante v. Bank of Am. Corp., 680 F. Supp. 2d 1298, 1303-04 (S.D. Fla. 2009), 468 F. App'x 918 (11th Cir. 2012). Statements in a Uniform Residential Loan Application "are the applicant's 'own statement[s] regarding his income' and are certified by the applicant when he signs 'the loan application, to be "true and correct,"' regardless of who assists the applicant in preparing the application." Id. (quoting Mustafa v. Countrywide Home Loans, Inc., No. 09-CV-12238, 2009 WL 3464860, *3 (E.D. Mich. Oct. 23, 2009)). The Plaintiffs "moved forward and executed the requisite documentation" for their closing on November 29, 2004. [Doc. 1-1 at ¶ 11]. At that time, in the exercise of due diligence, the Plaintiffs could have examined their application and discovered that the representation of their income, which was made *on their behalf* and on which the loan had been approved, was inaccurate. Viewing the factual allegations in the light most favorable to the Plaintiffs, it "clearly appears" on the face of the Amended Complaint that the Plaintiffs knew or should

have known at the time of the closing in November 2004 of the alleged wrongful conduct.[6]  See CSX Transp., 406 F. App'x at 729.

The Plaintiffs should have known of the allegedly fraudulent statements in their loan application when they executed the closing documents on November 29, 2004.  Thus, the statutes of limitations for the breach of duty of good faith and fair dealing, fraud, and Chapter 75 claims bar the Plaintiffs' claims in this action, since this action was not filed until almost eight years after the time of the closing.  [Doc. 1-1].  Therefore, the Bank's Motion to Dismiss the Plaintiffs' claims on the basis of the applicable statutes of limitations is granted.

## B.   Whether Plaintiffs' Claims are Barred as Premised on Breach of a Legal Duty that Does Not Exist

Even though the Court has already determined that the Plaintiffs' claims are barred by the statute of limitations, out of an abundance of caution the Court also addresses whether these claims are subject to dismissal on the merits.  The Bank has argued in the alternative that the

---

[6] The Plaintiffs' Amended Complaint is further fatally deficient in that it fails to allege that the wrongful conduct *was in fact committed by the Defendant.*  While the Plaintiffs proffer the legal conclusion that Prosperity was an agent of Wells Fargo [Doc. 1-1 at ¶ 6], the Plaintiffs failed to support this conclusory assertion with any plausible factual allegations.  The Plaintiffs do not allege that Prosperity was employed by the bank or that Prosperity had any actual or apparent authority to bind the bank in any manner.  In fact, Plaintiffs allege that Prosperity was a broker. [Doc. 1-1 at ¶5].  Without more, that would not make Prosperity an agent of the Defendant.  Plaintiffs, however, allege no more.

Plaintiffs' claims are subject to dismissal since they are premised on the breach of a legal duty that does not exist, namely the Plaintiffs' assertion that a bank has a duty to determine whether a loan is a good deal for its borrower.

A bank owes a borrower only those duties that are specified in the loan agreement. See Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) ("a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party"). It is "uncommon" to recognize a fiduciary relationship between a lender and a borrower in North Carolina.[7] Dallaire v. Bank of America, N.A., 738 S.E.2d 731, 735 (N.C. Ct. App. 2012), rev. allowed, 747 S.E.2d 535 (N.C. 2013) (citing Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992)). Here, the Plaintiffs make only conclusory allegations regarding the Bank's duties, with no factual reference to any duties imposed by the loan agreement itself or to any fiduciary relationship

---

[7] A fiduciary relationship is "one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . in which there is confidence reposed on one side, and resulting domination and influence on the other." Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Here, the Plaintiffs alleged that they "moved forward" based on "all assurances from Prosperity and Wells Fargo Bank," [Doc. 1-1 at ¶ 9], but failed to allege sufficient facts to plausibly support the existence of an agency relationship between Prosperity and the Bank or between the Plaintiffs and the Bank.

existing between the parties. The Plaintiffs merely allege with respect to their fraud claim that the Bank had a "duty to tell the truth" [Doc. 1-1 at ¶ 19], and with respect to their Chapter 75 claim that the Bank "acted unfairly" as it placed the Plaintiffs in a loan for which they did not qualify [Id. at ¶ 22(a)].[8] These conclusory allegations regarding the Bank's duties, however, presuppose that the Bank is somehow responsible for the misrepresentation of the Plaintiffs' income in the loan application, a

---

[8] In their "Brief in Opposition to Motion to Dismiss" [Doc. 14], the Plaintiffs attempted to suggest that the Bank had "superiority" over the Plaintiffs regarding the knowledge of their misrepresented income amounts. The Plaintiffs incorrectly relied upon Gant v. NCNB Nat'l Bank of N.C., 94 N.C. App. 198, 379 S.E.2d 865 (1989), by inserting brackets and the word "maker" in place of "surety [or guarantor]" in the following quote:

> If the creditor knows, or has good grounds for believing that the surety [or guarantor] is being deceived or misled, or that he is induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety [or guarantor] may afterwards avoid it.

Gant, 94 N.C. App. at 199-200, 379 S.E.2d at 867 (citing Trust Co. v. Akelaitis, 25 N.C. App. 522, 526, 214 S.E.2d 281, 284 (1975)). There is a marked difference between the relationship between a lender and a guarantor versus the relationship between a lender and a debtor. As the court in Gant states, "[a]lthough there is no fiduciary relationship between creditor and guarantor, International Harvester Credit Corp. v. Bowman, 69 N.C. App. 217, 220, 316 S.E.2d 619, 621, disc. rev. denied, 312 N.C. 493, 322 S.E.2d 556 (1984), in some instances a creditor owes a duty to the guarantor to disclose information about the principal debtor." Gant, 94 N.C. App. at 199-200, 379 S.E.2d at 867. It should be noted that the duty of the creditor to the surety arises where the creditor knows the surety is being misled by the maker. The Plaintiffs' modification to the quote completely changes the meaning of the quote so as to imply that a party being defrauded has a duty to the fraudster. Such argument is less than forthright.

16

supposition that is simply not supported by the factual allegations as stated in the Plaintiffs' Amended Complaint.  Thus, the Bank's Motion to Dismiss the Plaintiffs' claims is granted as to their fraud claim and their Chapter 75 claim, since they are premised on the breach of a legal duty that does not exist.

### C. Whether Plaintiffs Have Stated Claims for Fraud and Violations of Chapter 75

The Bank next argues that the Plaintiffs have failed to plead their fraud and unfair trade practices claims with the required particularity to allege reasonable reliance.  The Bank goes on to argue that the Plaintiffs even fail to allege a misstatement of past or present fact to support their claims.

Where a party's allegations sound in fraud, the allegations must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure.  Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008).  When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v.

Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Wright & Arthur Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

Further, the complainant of fraud must "identify the particular individuals who dealt with him when he alleges that he was defrauded by a group or association of persons." Coley v. North Carolina Nat'l Bank, 41 N.C. App. 121, 125, 254 S.E.2d 217, 219 (1979), citing Trussell v. United Underwriters, Ltd., 228 F. Supp. 757, 774-75 (D. Colo. 1964). A party must plead "facts from which the Court can infer that [the alleged principal] controlled [the alleged agent's] purportedly fraudulent actions in connection with" the event. Meisel v. Grunberg, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009); see also Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 74, 698 S.E.2d 757, 764 (2010) (noting that "[a]n agency relationship 'arises when parties manifest consent that one shall act on behalf of the other and subject to his control'" and "in establishing the existence of an actual agency relationship, the evidence must show that a principal actually consents to an agent acting on its behalf") (quoting Miller v. Piedmont Steam Co., 137 N.C. App. 520, 524, 528 S.E.2d 923, 926 (2000) and Phillips v. Restaurant Mgmt. of Carolina, L.P., 146 N.C. App. 203, 217, 552 S.E.2d 686, 695 (2001)). "The unsupported statement that [the agent]

acted as an agent on behalf of [the principal] is insufficient to allege an agency relationship encompassing the authority to make allegedly fraudulent statements." Id., 651 F. Supp. 2d at 121.

A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). Harrison, 176 F.3d at 783 n.5. Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud. Cozzarelli, 549 F.3d at 629. "The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." McCauley v. Home Loan Inv. Bank, FSB, 710 F.3d 551, 559 (4th Cir. 2013). Accordingly, the Court should be hesitant to dismiss a complaint under Rule 9(b) if the Court is "satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id. (quoting Harrison, 176 F.3d at 784).

In order to state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact

that: (1) was reasonably calculated to deceive; (2) was made with the intent to deceive; (3) did in fact deceive the party; and (4) resulted in damages to the party.  Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). Additionally, the party must demonstrate that any reliance on the false representations was reasonable.  See id.  "Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate."  Cobb v. Pennsylvania Life Ins. Co., 715 S.E.2d 541, 549 (N.C. Ct. App. 2011).

Here, a review of the Plaintiffs' Amended Complaint reveals that the Plaintiffs have not alleged the general time, place and content of each alleged fraudulent statement, and have not identified the person who made each statement and the recipient of each statement.  Rather, the Plaintiffs claim that Prosperity was an agent for the Bank, without providing factual allegations to determine such a relationship.  [Doc. 1-1 at ¶ 6].  The Plaintiffs claim that "Prosperity's agent asked the Plaintiffs to sign various documents in blank format so that they could later be completed by Prosperity's agent and then submitted to and for the benefit of the Bank," [Id. at ¶ 8], without identifying the person who made such a statement or

when or where it was made.[9]  The Plaintiffs claim that they "were assured by both Prosperity and Wells Fargo Bank that said loans complied with all federal codes and regulations and that their loan was in fact 'an acceptable and good loan,'" [Id. at ¶ 10], without identifying the persons who made such statements or when or where they were made.  The Plaintiffs further claim that "the agents of the Defendant fraudulently and illegally filled out various loan application documents as well as other federally mandated documents with false information related to the various of income of the Plaintiffs," [Id. at ¶ 14], without identifying the person who made such statements, establishing an agency relationship between Prosperity and the Bank, or alleging when or where such statements were made.  These conclusory allegations are insufficient to comport with the requirements of Rule 9(b) and thus fail to put the Bank on notice of the "particular circumstances for which it will have to prepare a defense at trial." McCauley, 710 F.3d at 559.

_____

[9] Under the Rule 9(b) heightened pleading standard, "the Court will not dismiss an adequate fraud claim because Plaintiff did not name the agent that signed the document."  Metro Group, Inc. v. Meridian Indus., No. 3:09-CV-440, 2010 WL 5056771 *4 (W.D.N.C. Dec. 6, 2010) (citing Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005)).  This case is distinguishable, however, because it fails to establish that Prosperity's agent was the Bank's agent, and it also fails to establish the time and place of the alleged misrepresentations.

Further, since the Plaintiffs have not alleged sufficient facts to establish the existence of an agency relationship between Prosperity and the Bank, their Amended Complaint fails to adequately allege the Bank's responsibility as the maker of the alleged fraudulent statements in their loan applications. [Doc. 1-1]. Thus, the Plaintiffs have failed to allege that such statements were "reasonably calculated [by the Bank] to deceive" them or that the Bank "made [such statements] with intent to deceive." Anderson, 508 F.3d at 189. Additionally, with respect to the other alleged statements of the Bank that "their loan was in fact 'an acceptable and good loan,'" [Id. at ¶ 10], the law is clear that "[a] mere recommendation or statement of opinion ordinarily cannot be the basis of a cause of action for fraud," Leftwich v. Gaines, 134 N.C. App. 502, 508, 521 S.E.2d 717, 722 (1999), disc. rev. denied, 351 N.C. 357, 541 S.E.2d 713 (1999) (citing Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980)), unless "at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener." Id., 134 N.C. App. at 508-09, 521 S.E.2d at 723. The Plaintiffs did not allege any facts to show that the Bank knew that the Plaintiffs would eventually be unable to make their loan payments or that the Bank intended to deceive them. [Docs. 1-1, 11]. In

fact, the Bank's statement (if the Bank had made a statement) as to what the Plaintiffs may or may not be able to do in the future is not a representation of a subsisting fact, but rather a prediction of the future. For these reasons, the Bank is correct in its contention that the Plaintiffs have failed to plead their fraud claim with sufficient particularity.[10]

Here, the Bank also seeks dismissal of the Plaintiffs' fraud claim based on the inadequacy of the Plaintiffs' allegations to establish that their reliance on the alleged misrepresentations was reasonable. If "the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." Hudson-Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 345-46, 511 S.E.2d 309, 312 (1999), citing Rosenthal v. Perkins, 42 N.C. App. 449, 451-52, 257 S.E.2d 63, 65 (1979). A fraud claim "is fatally defective" in North Carolina "unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with

_____

[10] Notably, the Plaintiffs were already given the opportunity to amend their Complaint [Doc. 10] to correct any deficiencies in their allegations, after the Bank first moved to dismiss their case. The Plaintiffs' Amended Complaint [Doc. 11] added a claim for injunctive relief in relation to the National Mortgage Settlement, but did not make any changes to the existing allegations of the original Complaint. [Doc. 1-1].

particularity." Frank M. McDermott, LTD. v. Motoetz, 898 F.2d 418, 421 (4th Cir. 1990).

The Plaintiffs could not have reasonably relied on the inflated income figures on their own loan applications. The Plaintiffs have not alleged that they were ever "denied the opportunity to investigate [their loan applications] or that [they] could not have learned the true facts by exercise of reasonable diligence." Hudson-Cole Dev. Corp., 132 N.C. App. at 345-46, 511 S.E.2d at 312. The law is clear that in a fraud case, "[a] person signing a written instrument is under a duty to read it and ordinarily is charged with knowledge of its contents." Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 455, 400 S.E.2d 476, 479 (1991). Further, in North Carolina, a party cannot plead fraud in the *factum* as a defense when he signed an instrument in blank. Creasman v. First Federal Sav. & Loan Assoc., 279 N.C. 361, 369-70, 183 S.E.2d 115, 119-20 (1971). As noted in Creasman,

> It is well settled that if the maker of an instrument intrusts [sic] it to another for use with blanks to fill up, such instrument so delivered carries on its face an implied authority to fill up the blank spaces and deliver the instrument . . . he cannot say that the instrument he signed was different from what he intended to sign, for he intended to sign a blank form, leaving it to another to complete. In such a case, notwithstanding he may have been induced to

> sign by false representations that the blanks would
> be filled in a certain way, he knowingly executed the
> very instrument which he intended to execute.

Id., 279 N.C. at 369-70, 183 S.E.2d at 119-20 (citing Phillips v. Hensley, 175 N.C. 23-25, 94 S.E. 673-74 (1917)).  As the court opined in Battah v. ResMAE Mortgage Corp., 746 F. Supp. 2d 869, 875 (E.D. Mich. 2010), "it is absurd for a person to sue for fraud based on the claim that he reasonably relied on inflated statements regarding his own income on a loan application."[11]  Thus, the Plaintiffs failed to allege facts sufficient to show that they reasonably relied on the inflated income figures.  [Doc. 1-1].

---

[11]    This case is analogous to Karamath v. United States Bank, No. 11-CV-1557(NGG)(RML), 2012 WL 4327613 *5 (E.D.N.Y. Aug. 29, 2012), in which the court opined that since the complaining party was "in the best position to know her own income and expenses, she could not reasonably have relied on any misrepresentations about her ability to make payments" and thus her fraud claim was dismissed since she could not reasonably have relied on the lender's alleged misstatement of her own income.  See also Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405 (E.D.N.Y. 2011).  Because the Plaintiffs signed their loan applications prior to closing and then signed authorizations for their loans on the date of closing, the Plaintiffs could potentially be the parties responsible for the misrepresentations of their own income in this case.

"As other courts have noted in similar cases, if plaintiffs were not aware of the use of an inflated income to qualify them for the loan, then they could not possibly have relied on that misrepresentation . . . Certainly, plaintiffs cannot be suggesting that they believed they made more money because it said so on the loan application." Zimmerman v. Logemann, No. 09-CV-210, 2011 WL 1674956 *15 (W.D. Wis. Mar. 17, 2011).  See also Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010) and Oglesbee v. IndyMac Fin. Services, Inc., 686 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010) (both dismissing fraud claims since the inflated incomes on the plaintiffs' loan applications were made to the lenders rather than to the plaintiffs).

Further, the Plaintiffs could not have reasonably relied on the suggestion that the loans were "acceptable and good" since they would have discovered the incorrect income amounts in their loan applications if they had employed reasonable diligence.[12]  In the present case, the Plaintiffs were able to maintain their loan payments until a future unforeseen event years after the closing, "during the real estate collapse and the economic collapse which began in 2007 and continues to this day." [Doc. 1-1 at ¶ 12].  The Plaintiffs failed to allege facts showing their detrimental reliance on any representations by the Bank.  Therefore, it is clear on the face of the Amended Complaint that the Plaintiffs' reliance on the Bank's alleged statements was not reasonable or justifiable.

Because the Plaintiffs' Chapter 75 claim is based on the same alleged misrepresentations and omissions that form the basis of their fraud claim, the Chapter 75 claim also fails.  To state a claim for unfair and deceptive trade practices under Chapter 75, a party must allege sufficient facts to show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused

---

[12] As previously noted, "[a] mere recommendation or statement of opinion ordinarily cannot be the basis of a cause of action for fraud" in North Carolina apart from the maker of such statement having knowledge, actually holding a different opinion, and acting with an intent to deceive.  Leftwich, 134 N.C. App. at 508-09, 521 S.E.2d at 722-23.

actual injury to the plaintiff or to his business." <u>Spartan Leasing, Inc.</u>, 101 N.C. App. at 460-61, 400 S.E.2d at 482. A deceptive practice is one that has "the capacity or tendency to deceive the average consumer, but proof of actual deception is not required." <u>Id.</u> at 461, 400 S.E.2d at 482. "[P]roof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive acts." <u>Karp</u>, 887 F. Supp. 2d at 688 (quoting <u>Winston Realty Co. v. G.H.G., Inc.</u>, 314 N.C. 90, 97, 331 S.E.2d 677, 681 (1985)). Although allegations of fraud are not necessary to state a prima facie case for a Chapter 75 claim, <u>Rutledge v. High Point Regional Health System</u>, 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008), the Plaintiffs' Chapter 75 claim is premised on the Bank's alleged fraud in this case. [Doc. 1-1 at ¶ 22]. Because the Court has concluded that the Plaintiffs have failed to state a plausible fraud claim with sufficient particularity to survive a motion to dismiss, the Court likewise will grant the Bank's Motion to Dismiss with respect to the Chapter 75 claim for the same reasons.

### D. Whether the Plaintiffs' Claim for Breach of the Duty of Good Faith and Fair Dealing is Barred Since no Breach of Contract is Identified

The Bank further contends that the Plaintiffs' claim for breach of the duty of good faith and fair dealing is barred since the Plaintiffs failed to identify a breach of contract upon which to base such an action.

In North Carolina, "the implied duty of good faith and fair dealing only arises where a party to a contract performs its contractual obligations in bad faith . . ." See Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 486-87 (W.D.N.C. 2009) (citing Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc., 40 N.C. App. 743, 746, 253 S.E.2d 625, 627-28 (1979)). Although it is not mandatory for a party to allege a breach of contract in order to succeed on a claim for a breach of the duty of good faith and fair dealing, Robinson v. Deutsche Bank Nat'l Trust Co., No. 5:12-CV-590-F, 2013 WL 1452933, *11 (E.D.N.C. April 9, 2013) (citing Richardson v. Bank of America, N.A., 182 N.C. App. 531, 556, 643 S.E.2d 410, 426 (2007)), it is necessary for the party to be "a party or a beneficiary to a valid contract in order to assert [such] a claim . . ." Id., 2013 WL 1452933 at *11.

Further, "North Carolina courts . . . do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties." See Meineke Car Care Centers, Inc. v. RLB Holdings, LLC, No. 3:08-CV-240-RJC, 2009 WL 2461953, *11 (W.D.N.C. Aug. 10, 2009), rev'd on other grounds (citing Mechanical Indus., Inc. v. O'Brien/Atkins Assocs., P.A., No. 1:97-CV-00099, 1998 U.S. Dist. LEXIS 5389, *10 (M.D.N.C. 1998) (referencing special relationships such as in contracts for funeral services or insurance)). "[A]n ordinary

debtor-creditor relationship generally does not give rise to such a special confidence," and it is "uncommon" to recognize a fiduciary relationship between a lender and a borrower in North Carolina. <u>Dallaire</u>, 738 S.E.2d at 735. As noted previously, "a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." <u>Camp</u>, 133 N.C. App. at 560, 515 S.E.2d at 913.

Here, the Plaintiffs have alleged that the Bank breached its duty of good faith and fair dealing by "fabricating materials relevant to the acceptance of the loan procured therein . . ." [Doc. 1-1 at ¶ 16]. Thus, the Plaintiffs allege that the breach took place before any contractual agreement between the Plaintiffs and the Bank came into existence to close on the property. Because these allegations concern conduct which occurred prior to the formation of the contract, no cause of action can be state for a breach of the duty of good faith and fair dealing. <u>See</u> <u>Suntrust Mortgage Co. v. Busby</u>, 651 F.Supp.2d 472, 487 (W.D.N.C. 2009). In the absence of a contractual duty, the Bank owed the Plaintiffs no duty of good faith and fair dealing unless it existed through a special relationship. <u>Dallaire</u>, 738 S.E.2d at 735. The Plaintiffs have merely asserted the Bank's responsibility for the alleged fabrications by Prosperity, without alleging facts to establish any agency relationship between Prosperity and the Bank

or a special relationship between the Plaintiffs and the Bank. [Docs. 1-1, 11]. The Court will not further explore the relationship between the parties due to the expiration of the statute of limitations period, which bars this claim for breach of the duty of good faith and fair dealing as discussed previously.

### E. Whether the Plaintiffs' Claim for Injunctive Relief is Barred Due to No Standing and No Likelihood of Success on the Merits

Next, the Bank contends that the Plaintiffs have no standing to attempt to enforce the "National Mortgage Settlement" and cannot show a likelihood of success on the merits of any of their claims. Because the Court has already determined that the Plaintiffs' claims for breach of the duty of good faith and fair dealing, fraud, and Chapter 75 violations are without merit since they are barred by the applicable statutes of limitations and were not pled sufficiently by the Plaintiffs, the Plaintiffs' claim for injunctive relief based on those theories of liability is also barred.

## V. CONCLUSION

For the foregoing reasons, the Court will grant the Defendant's Motion to Dismiss.

**IT IS, THEREFORE ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. 12] is **GRANTED**, and this action is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: March 21, 2014

Martin Reidinger
United States District Judge